# SUPERIOR COURT

Anna R. McCabe
vs.　　　No. 58237
Providence Journal Co.
RESCRIPT.
January 15, 1925

CAPOTOSTO, J. The plaintiff received a verdict of $3000 for injuries claimed to have been received by her through the alleged negligence of the defendant's agent, while operating a truck on Francis street near the intersection of Francis street and Exchange Place in the City of Providence, in the early morning of September 3, 1923. The defendant moves for a new trial upon the usual grounds.

Miss McCabe, the plaintiff, with her escort, Mr. Thomas T. O'Donnell, had attended the midnight frolic at the Arcadia, and on their way home had secured the services of Mr. Joseph E. Conlon, the owner and driver of a taxicab, at the West Approach, so called, to the Union Station. After directing him to drive them to Pawtucket, the taxicab started, going down and across the West Approach in an easterly direction along the northerly side of Exchange Place and then, taking a more or less diagonal course in a northeasterly direction at the intersection of Francis street and Exchange Place, at or near the crosswalk of these two streets, headed towards the east side of Francis street. For the purposes of this case it may be said that Exchange Place lies east and west, while Francis street runs north and south. Francis street near the point of intersection with Exchange Place is 76 feet wide from curb to curb and has two sets of car tracks in the center of the street. The westerly sidewalk of Francis street is 12 feet wide, and the distance from the westerly curb to the nearest rail is approximately 30 feet. Separating the easterly side of the West Approach from the inner edge of the westerly sidewalk there is a steep embankment increasing in grade and size as you approach the Union Station.

At the time of the accident a movable lunch cart was located next to the westerly curb on Francis street and within close proximity to the crosswalk between Francis street and Exchange Place. The lunch cart in question was 24 feet long, 6½ feet

wide and somewhat over 10 feet high.

The defendant's truck was coming down Francis street towards Exchange Place on its right hand or westerly side of Francis street. By ordinance of the City of Providence the northerly side of Exchange Place is a one way street requiring vehicles intending to enter Francis street to approach the entrance thereof from the east and not from the west. The collision between the taxicab in which the plaintiff was a passenger and the defendant's truck occurred a short distance from the crosswalk at the intersection of the two streets and close to the westerly rail of the inbound car track.

On behalf of the plaintiff the driver of the taxicab testified that he was taking the most direct way to Pawtucket; that as he was swinging from the West Approach to the station into Francis street, going at a rate of speed no greater than a person could walk, and after he had cleared the corner with its sloping embankment and passed beyond the lunch cart, which obstructed his view, he saw the defendant's truck about 100 to 150 feet away proceeding towards him at a speed of some 50 miles an hour; that he stopped his taxicab while the truck did not diminish its speed, and that not more than two seconds elapsed between the time he first saw the truck and the actual collision.

Mr. O'Donnell, who was in the taxicab with the plaintiff, said that he happened to look up and saw the truck about 100 feet away; that it was coming at a speed of 40 miles an hour; that the accident happened within the space of five or six seconds; that he hollered "stop" to his driver, and that the collision happened within three or four seconds after he gave his warning.

The plaintiff herself said that when she saw the truck bearing down on them, she screamed; that when she first saw the truck it was the diagonal distance of court room No. 4, an estimated distance of some 50 feet, from her and that it was proceeding at a good clip although she could not fix the rate of speed at which it was moving.

The defence, through Mr. Stafford, the driver of the truck, maintained that, on approaching the corner of Francis street and Exchange Place, he put on his brakes, thereby reducing his speed of about 20 miles an hour to about 12 miles an hour; that he intended turning into Exchange Place and proceeding westerly to Washington, Eddy and Fulton streets to the defendant's office; that when he was abreast of the lunch cart and 4 or 5 feet away from it, the taxicab suddenly appeared in motion in front of him some 12 feet away; that he immediately released his brakes and swung his truck to his left, and that the right sides of both automobiles came into collision with each other.

Mr. Edward J. Smith, a helper, who was on the driver's seat of the truck with Mr. Stafford, and who was thrown from his seat at the time of the collision, corroborates Mr. Stafford.

Mr. John J. Devine, an employee of the United Electric Railways Company, who was waiting at the corner of Francis street and the West Approach to the station for a special car which he was to operate, said that as the taxicab cut the corner at which he was standing, it was moving at a rate of some 20 miles an hour; that he then saw the defendant's truck some 12 feet or so away; that he could not estimate the speed of the truck on account of position and lack of time, and that within three or four seconds the two vehicles came together. He also testified that soon after the accident he gave his

name as a witness to Mr. Stafford. This last fact is noted because an attempt was made to discredit this witness by reason of a certain interview which he had with one of the plaintiff's counsel.

The relative position of the two vehicles after the accident and the resulting damage to each may be material. Mr. Conlon testified that the force of the collision threw his Cadillac limousine taxicab around so that instead of pointing in a northeasterly direction as it had done before the accident, it was facing in a southerly direction after the impact, and that the truck had proceeded a distance of some 100 feet into Exchange Place after striking his car. Mr. O'Donnell said that the truck pushed them right out of the way and kept on going for a distance of 80 or 100 feet before it come to a stop.

Mr. Stafford testified that after the accident the taxicab was pointing in an easterly direction and his truck was brought to a stop on the crosswalk in question, some 12 feet from where the collision occurred. Mr. Smith, who was hurt by the toss he took, could not say where the two vehicles were situated on the roadway immediately after the accident. Mr. Devine testified that the truck stopped some 12 or 13 feet to the left of the taxicab, just over the crosswalk, a distance of about 25 feet intervening between the two vehicles.

The result of the collision on the taxicab showed damage to the right front spring, the two front fenders, the right hand headlight, and the radiator, which was pulled out of place by a twisting of the chassis. On the truck the damage was all on the right side, including the right front mudguard, running board and a broken front wheel. The estimated weight of the taxicab is 5700 pounds and of the truck 4200 pounds.

The testimony, the physical facts and the appearance of the witnesses while testifying are important factors to keep in mind. The evidence of the taxicab driver is marked throughout with a perceptible degree of exaggeration, possibly explained by the human instinct of self protection. The testimony of Mr. Devine, on the other hand, while open to the possible criticism of self satisfaction, is on the whole definite and, when considered in the light of all the circumstances, more in accord with established facts.

The driver of the taxicab, an intrested witness in spite of his disclaimer of any personal concern in the outcome of the case, by his conduct on the night in question failed to exercise to any reasonable dgree any care for the safety of himself, his passengers and others who might be lawfully upon the highway. Turning from the West Aprroach to the station into the westerly portion of Francis street in the manner that he did, but cutting across the intersection of the two streets and in flat violation of a traffic rule of the City of Providence, at a time when he knew not only the physical contour of the corner in question but, further, was aware of the obstruction presented by the movable lunch cart which was close to the corner, shows the taxicab driver's conduct deserving of severe criticism. His testimony to the effect that he stopped his taxicab after he had passed beyond the lunch cart and saw the defendant's automobile some 100 to 150 feet away, coming towards him at 50 miles an hour, makes one hesitate in accepting its correctness. To estimate at night the speed of an oncoming car almost directly in front of the observer in the limited space of two seconds, the time fixed by the witness as intervening between when he first saw the truck

and the actual collision, may be possible, but difficult to accept as reasonable or probable. The further fact that he stopped his taxicab when he first saw the defendant's truck is also open to very serious question. Mr. O'Donnell, who was under no legal obligation to watch the traffic as the driver was bound to do, testified that when he saw the truck he shouted "stop" to his driver. The inference from this testimony is that the driver, as well as the passengers of the taxicab realized the existence of a sudden emergency, and that the first impulse of these individuals was to stop. The physical evidence, as disclosed by the relative position of the two cars near or upon the crosswalk after the accident, deny that the taxicab was in fact stopped before the defendant's car came into collision with it.

Assuming, therefore, the negligence of the taxicab driver, and conceding that the plaintiff herself under the particular circumstances of this case was in the exercise of due care, the plaintiff can not recover unless the defendant was negligent and that negligence proximately concurred, at least, in causing the injuries complained of.

The driver of the truck was on a portion of the highway where he had a right to be, both by law and in the exercise of ordinary prudence. He had a right to assume that others operating motor cars would drive those vehicles in reasonable compliance to the requirements of law. He was not legally bound to expect that a motor car would, in violation of statutory law and traffic ordinances, be suddenly driven around an obvious obstruction into the path which he had a lawful right to pursue. As to his rate of speed, there is some question. The plaintiff puts it as high as 40 or 50 miles an hour, while the defendant places it as about 12 miles

an hour. The plaintiff's estimate, in view of all the testimony, is grossly exaggerated; that of the defendant, while probably underestimated, is nearer the actual fact. Keeping in mind the unbuilt character of the approach to the Union Station for a distance of over 500 feet and the time of early morning when this accident occurred, a reasonable latitude in the matter of speed at which the truck was being operated just before the accident may fairly be allowed the driver of the truck. The plaintiff lays great stress upon the fact that Mr. Smith was thrown from the truck at the time of the collision, arguing that this is positive proof of the high speed at which the truck was being operated. While this is a possible inference, yet we must not forget that the defendant's truck was suddenly swung to the left when the driver attempted to avoid striking the taxicab which suddenly appeared a few feet in front of him. When a turn is unexpectedly made by an automobile, a person who is not forewarned and is not holding on to any support is very likely to be thrown in a direction opposite to that in which the turn is made. The fact that this witness was thrown from the truck in the manner that he was, examined in the light of the damage resulting to each of the two vehicles, tends to establish the fact that the defendant's driver, confronted by a sudden emergency and having a few seconds at best within which to act, did, almost instinctively, turn to the left in an endeavour to avoid the accident.

The plaintiff, in a final analysis of her claim, bases her right to recover upon the doctrine of the last clear chance. Upon all the evidence fairly examined and considered as a whole, including oral testimony and positive physical facts, there is little, if any, testimony of any probative value upon

which can be based a finding that the driver of the defendant's truck could have avoided the accident after he saw or should have seen the predicament in which Mr. Conlon's negligent operation of the taxicab had placed the plaintiff in this case. While the speed at which the truck was being operated is an important element to consider, yet the facts as finally established by the evidence in this case do not show that the speed of the defendant's truck, whatever it may have been, entered into the cause of the collision.

The plaintiff, in support of her contentions, cites the case of Berghmann vs. Rhode Island Co., reported in 87 Atlantic 314, in which the court by a majority opinion decided that a nonsuit was improperly granted.

Without going into details as to other distinguishing characteristics, it may be said that the basic point of difference between that and the present case lies in the right of the trial court to order a non-suit and its duty in passing upon a motion for a new trial.

The case under consideration is, in the court's opinion, analogous to the case of Whalen vs. Dunbar, 44 R. I. 136. It is in reality a case of a driver who is met with a sudden emergency at a time and under conditions when a collision could not reasonably have been avoided.

While it may not be necessary to consider the question of damages in view of the conclusion reached on the question of liability, yet let it be noted that the jury was extremely liberal in fixing the amount which the plaintiff was to receive. If the facts showed that the defendant was liable, the sum of $1500 would have fully compensated the plaintiff for her injuries.

Motion for a new trial granted.

For Plaintiff: John H. McGough.

For Defendant: Ralph T. Barnefield.